**Docket No. 2023-143**

*In the*

# United States Court of Appeals

*for the*

# Federal Circuit

IN RE META PLATFORMS, INC.,
*Petitioner.*

On Petition for a Writ of Mandamus to the United States District Court for the
Western District of Texas in Case No. 23-cv-00623-ADA,
District Judge Alan D. Albright.

## PETITIONER'S REPLY IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS (NON-CONFIDENTIAL)

HEIDI L. KEEFE, ESQ.
MARK R. WEINSTEIN, ESQ.
ELIZABETH L. STAMESHKIN, ESQ.
COOLEY LLP
3175 Hanover Street
Palo Alto, California 94304
(640) 843-5000 Telephone
hkeefe@cooley.com
mweinstein@cooley.com
lstameshkin@cooley.com

PHILLIP E. MORTON, ESQ.
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, District of Columbia 20004
(202) 728-7055 Telephone
pmorton@cooley.com
eterrell@cooley.com

*Attorneys for Petitioner Meta Platforms, Inc.*

 

## CERTIFICATE OF INTEREST

Counsel for Appellee Meta Platforms, Inc. certify the following:

1.    The full name of every party or amicus represented by me is:

Meta Platforms, Inc. (formerly Facebook, Inc.)

2.    The name of the real party in interest (Please only include any real party in interest NOT identified in Question 3 below) represented by me:

None.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Cooley LLP: Heidi Keefe, Mark Weinstein, Phillip Morton, Elizabeth Stameshkin, Alexandra Leeper, Emily Terrell; The Dacus Firm: Deron Dacus

5.    The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. See Fed. Cir. R. 47. 4(a)(5) and 47.5(b).

None

6.    This appeal does not involve any organizational victims, bankruptcy debtors, or bankruptcy trustees.

Dated:  August 14, 2023

*/s/ Heidi L. Keefe*
Heidi L. Keefe

*Counsel for Petitioner Meta Platforms, Inc.*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................1

II.  META'S PETITION IS TIMELY.................................................2

III.  THE ALTERNATIVE REQUEST TO TRANSFER TO AUSTIN
DOES NOT IMPACT WHETHER THE WRIT SHOULD ISSUE ..............3

IV.  IMMERSION'S ATTEMPTS TO BACKFILL THE EMPTY
RECORD ON PRODUCT COMPETITION SHOULD BE
REJECTED.................................................................................4

V.  THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION
ON THE OTHER TRANSFER FACTORS....................................6

    A.  THE COMPULSORY PROCESS FACTOR STRONGLY
WEIGHS IN FAVOR OF TRANSFER...............................6

    B.  CALIFORNIA'S SUBSTANTIAL LOCAL INTEREST ALSO
FAVORS TRANSFER.....................................................10

    C.  THE NEARLY 400 POTENTIAL WILLING WITNESSES
THAT WOULD FIND NDCA MORE CONVENIENT FAR
EXCEED THE 23 CREDITED BY THE DISTRICT COURT
IN WDTX..................................................................12

VI.  CONCLUSION.......................................................................15

CERTIFICATE OF COMPLIANCE....................................................16

CERTIFICATE OF SERVICE ...........................................................17

## CONFIDENTIAL MATERIAL OMITTED

The material omitted from pages 1 and 7-10 are omitted from this non-confidential version of the brief. The materials on pages 1, 7-8 and 10 were designated by Immersion Corporation as confidential business in the underlying proceeding. The material on page 9 reflects third party confidential business information relating to confidential work between Meta and third parties.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) ...........................................................11

*In re Apple, Inc.*,
  581 F. App'x 886 (Fed. Cir. 2014) .......................................................7

*In re Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009) ...........................................................7

*In re Google*,
  58 F.4th 1379 (Fed. Cir. 2023) .......................................................5, 10

*In re Hoffman-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) .........................................................11

*In re Microsoft Corp.*,
  No. 2023-128, 2023 WL 3861078 (Fed. Cir. June 7, 2023)...........................2, 13

**Statutes**

28 U.S.C. § 1404(a) ...................................................................2, 7, 15

**Other Authorities**

Fed. R. App. P.
  10(a) ..............................................................................................1
  21.....................................................................................................2

**[CONFIDENTIAL MATERIAL OMITTED]**

## I.    INTRODUCTION

The record indisputably demonstrates that the Northern District of California

("NDCA") is the most convenient forum for this litigation.  Meta is headquartered

there; the vast majority of the witnesses are located there; Immersion was founded

and had its headquarters in NDCA for over 30 years and still holds board meetings

there "for ▮▮▮▮▮▮▮;" many of the inventors of the asserted patents still reside

there; and because the Accused Products were developed primarily in California,

California (not Texas) has the most interest in the dispute.

Realizing that the record clearly supports a transfer to NDCA, Immersion

attempts to shore up the district court's denial of transfer[1] by making up facts and

attempting to supplement the record with more than 100 pages of new material in

violation of this Court's rules.  *See* Fed. R. App. P. 10(a); SAppx4090-SAppx4197

(new evidence in appendix not part of the district court record). But Immersion's

attempt to backfill the record to justify the district court's order only further

highlights the fact that the court abused its discretion by relying on non-existent facts

---

[1] Immersion also addresses several venue transfer factors that were not at issue in
Meta's petition, including the access to sources of proof factor (Resp. Br. at 13-15)
and all other practical problems factor (Resp. Br. at 26).  To streamline its petition,
Meta did not contest the district court's findings on those factors.  As Immersion did
not cross-petition for mandamus, its discussion of the district court's assessment of
those factors should be disregarded.  Moreover, the district court's conclusions on
those factors were not clearly erroneous on the current record and Immersion has not
shown otherwise.

and misreading the record to support its decision.  The Court should therefore direct the district court to vacate its order denying transfer to NDCA, and to transfer this action to NDCA for the convenience of all parties and witnesses.

## II.    META'S PETITION IS TIMELY

Meta's petition is timely under the circumstances, and Immersion does not argue it has suffered any prejudice from the timing—because it has not.  Meta's petition, filed 64 days after the district court entered its order denying Meta's motion to transfer (May 30, 2023[2]), is consistent with the timeframe of other petitions in which this Court has granted mandamus relief.  *See, e.g.*, *In re Microsoft Corp.*, No. 2023-128, 2023 WL 3861078 (Fed. Cir. June 7, 2023) (granting mandamus petition for transfer under § 1404(a) filed 69 days after order denying motion to transfer); *see also* Fed. R. App. P. 21 (setting no specific deadline for filing of a mandamus petition).  Trial remains half a year away, and the district court has not done anything of substance in this case since its *Markman* ruling the day after its transfer ruling.  *In re Microsoft Corp.*, 2023 WL 3861078, at *1 n.* (filing of petition eight months before trial not "so substantial and prejudicial as to warrant denial").  Fact discovery remains open, and no fact witness depositions have been taken or even scheduled.

---

[2] The district court's order denying transfer was dated May 29, 2023, but was not provided to the parties until after the claim construction hearing on May 30, 2023.

By way of comparison, Meta's time to prepare its petition was nearly a month quicker than the time Immersion took to oppose Meta's motion to transfer. Immersion required 92 days to file its responsive brief in the district court and an additional 30 days after Meta's reply to then file an extra sur-reply brief. Appx959-964. As an additional point of comparison, the district court's opinion was issued 128 days after the January 23, 2023 hearing on the motion to transfer. Appx965-966. Under the circumstances, therefore, the present Petition is timely.

## III. THE ALTERNATIVE REQUEST TO TRANSFER TO AUSTIN DOES NOT IMPACT WHETHER THE WRIT SHOULD ISSUE

Immersion never defends its choice to file this case in Waco, which has no connection to this dispute other than a storage locker of documents moved from California for litigation purposes mere weeks before the venue transfer motion was filed. Pet. at 7.[3]

---

[3] Shortly after the district court's order denying transfer, Immersion's counsel published a blog post celebrating that order, noting that the Western District of Texas had changed its past practice of reassigning cases transferred from the Waco division. *See* Dewberry, Timothy and Abraham, Joseph M., *Is Judge Albright's Role Reexpanding to Include the Austin Division?*, https://ipwatchdog.com/2023/06/15/judge-albrights-role-reexpanding-include-austin-division/id=162424/ (last accessed August 12, 2023) ("in November 2021, Judge Albright reassigned all remaining cases that he had previously retained to the two sitting Austin Division judges. . . . However, in a recent return to earlier practice, over the last 30 days, Judge Albright has retained at least three cases transferred from Waco to Austin.").

Immersion falsely states that Meta argued that Austin was "convenient," but Meta made no such argument. The quoted statements in Immersion's brief are statements made by Immersion (Appx711), restatements of Immersion's positions in briefing (Appx210), or statements of the district court (Appx1). Indeed, the district court expressly acknowledged to Meta's counsel during the transfer hearing that "**I understand you really don't want to be in Austin. I get that.**" Appx910 at 64:23-24 (emphasis added). Even if Meta had asserted that Austin was a more "convenient" venue than Waco, TX, the district court's order denial of transfer to NDCA was still an abuse of discretion, as the record demonstrates that NDCA is a much more convenient forum than either the Waco or Austin Division of the Western District of Texas ("WDTX").

Immersion cannot meaningfully dispute the enormous inconvenience that trial in any WDTX venue would present for many party witnesses who would have to travel to WDTX, nor can Immersion dispute that many non-party California witnesses cannot be compelled to appear for or testify at trial in any division in WDTX. The transfer from the Waco to Austin Division changes none of this.

## IV. IMMERSION'S ATTEMPTS TO BACKFILL THE EMPTY RECORD ON PRODUCT COMPETITION SHOULD BE REJECTED

Immersion, a company that develops IP about haptics, does not compete with Meta, a company that, among other things, makes AR/VR hardware and software. Immersion concedes that it never argued that it was "engaged in product competition

in the marketplace[,]" thus confirming that there is no evidence in the record to support the district court's conclusion that competition between the parties weighed in favor of transfer. The factor thus should have been treated as neutral under *In re Google*, 58 F.4th 1379, 1383 (Fed. Cir. 2023) ("*Google I*"). Nevertheless, Immersion now improperly attempts to backfill the record with new materials that were not cited in support of this argument to the district court.

And even if these materials were considered, they do not show competition between Immersion and Meta. For example, Immersion starts by arguing that it has "technical staff" overseas. Resp. Br. at 28-29. But merely purportedly employing "technical staff" with no identified job responsibilities does not establish that Immersion competes with Meta (or any other company). Immersion also cites to its second quarter 2022 10-Q report filed with the SEC, quoting various hearsay statements about its business. *Id.* at 29. But those statements at best discuss licensing patents and supporting products of Immersion's customers – not developing or producing its own products, let alone products competing with Meta. Appx347 ("integrate our patented technology into our customers' products"); *id.* ("enhance the functionality of our patented technology to certain customers"); *id.* ("offer[] licenses to our patented technology to other customers"); Appx365 (discussing markets into which the company licenses technology). Likewise, Immersion's reference to an "Open XR" industry group (Resp. Br. at 29) was about

developing "industry standard[s]", evidencing cooperation, not competition. Appx721 (Jonathan Wright "works with the Open XR working group to develop industry standard VR APIs"). In addition, the claim that Immersion "jointly developed" a haptics driver with TI is not supported by the record, as the article about that eight-year-old chip only notes that certain haptics effects were licensed from Immersion. SAppx3425-26.

Immersion also newly claims that its revenue is declining, citing the 2022 10-Q discussed above, but the contemporaneous annual reports show substantially increasing revenues and profits. Appx337 (income statement showing substantially increased revenue and profits from 2020 to 2021). This argument is also entirely irrelevant because, even if Immersion had shown a decrease in its revenue, it has not shown that any such decrease was attributable to competition with Meta.

Immersion's improper and unavailing attempts to backfill the record to shore up the district court's *sua sponte* and unsupported conclusion regarding product competition should be rejected. This factor should have been deemed "neutral" in line with the *Google I* decision.

## V. THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION ON THE OTHER TRANSFER FACTORS

### A. The Compulsory Process Factor Strongly Weighs In Favor Of Transfer

The record is clear that more than ten times as many non-party witnesses would be subject to the subpoena power of NDCA as compared to WDTX and would

**[CONFIDENTIAL MATERIAL OMITTED]**

<u>find trial in NDCA more convenient</u>.  This fact alone should have caused the district court to find that the "compulsory process" factor weighs "strongly in favor of transfer" rather than just "slightly in favor of transfer."  *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (finding the "compulsory process" factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue") (citing *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).  The convenience of witnesses, including third parties, "is probably the single most important factor" in the § 1404(a) transfer analysis.  *In re Genentech*, 566 F.3d at 1343 (citation omitted).

Regarding the <u>eight</u> non-party Immersion inventors who reside within the subpoena power of NDCA, Immersion is wrong to suggest that the inventors could be ▮▮▮▮ to ▮▮ in ▮▮▮, as the district court noted that those ▮▮▮▮▮ "only allow Immersion to require" certain post-▮▮▮▮▮ related to the ▮▮▮.  Resp. Br. at 18-19.  Indeed, the district court questioned whether it would have the power to ▮▮▮ the non-party inventors to ▮▮▮ at ▮▮ in ▮▮▮, acknowledging that if these ▮▮▮ with inventors could not be ▮▮▮, "[the inventors] would properly fall under the compulsory process factor and would weigh in favor of transfer." Appx26; *see also* Appx28 ("All potentially relevant third parties that have been identified are likely within the reach [sic] NDCAs subpoena

power, including relevant inventor, prior art witnesses, and Immersion licensees.").

Likewise, as determined by the district court, Immersion presented no evidence of any ██████████ ██████████ with the ten non-party former Immersion employee prior art witnesses that would ████████ those witnesses to ████████ at a ████████ in ████████. Appx26-27. Immersion cites ████████ ████████ ████████, but those *pro forma* ████████ do not include any language requiring them to ████████ at ████████ in ████████, especially if requested by Meta instead of Immersion. Resp. Br. at 19 (citing SAppx2594-2619, SAppx1995-1967). Again, these witnesses were correctly treated (but not properly weighed) as witnesses subject to compulsory process in NDCA but not WDTX. Appx28.

Immersion also takes issue with the three NDCA licensees counted in Meta's favor,[4] but again the district court already found that their testimony would be relevant to damages and weighed slightly in favor of transfer. Appx27-28. Other than an irrelevant reference to the parol evidence rule (which does not apply as Meta was not a party to the licenses and thus is not bound by any such rule), Immersion identifies no error with the district court's findings on those witnesses.

Rather than defend the district court's findings, Immersion seemingly criticizes the very decision it seeks to uphold. Immersion takes a detour by raising

---

[4] Immersion points to nine Meta "IP" licensees in its brief, but does not explain what relevance, if any, these licenses have to this case. Resp. Br. at 19.

**[CONFIDENTIAL MATERIAL OMITTED]**



already rejected third-party witnesses from ▮ and ▮▮▮▮▮. Resp. Br. at 18. The district court rejected witnesses from those companies as "▮ and ▮ are not relevant third parties. Both of them do not supply haptics chips to the Accused Products." Appx27. Immersion's reference to a successor product using a ▮▮▮ haptics driver is similarly not relevant as it relates to an unaccused, yet to be released product. Resp. Br. at 18.

Immersion's disagreement with aspects of the district court's third-party witness analysis continues with Unity, Epic Games,[5] Mighty Coconut, and Owlchemy. *Id.* at 17-18. But again, the district court rejected Immersion's reliance on these parties, finding them "neutral in considering the availability of compulsory process because relevant content creators are in NDCA and WDTX and the lack of specific identification of employees who might testify." Appx27.

With respect to the only two witnesses the district court found subject to compulsory process in WDTX, Immersion does not dispute the lack of record evidence supporting the district court's findings that these witnesses are relevant. Immersion does not dispute that it did not present any evidence about Mr. Carmack

---

[5] Immersion raises "43 specific Texas-based employees" from Unity and Epic Games, but Immersion never told the district court in the briefing below that anywhere close to 43 people from those companies were relevant to the issues here. All Immersion did was cite to a collection of LinkedIn profiles with no discussion of any particular person, let alone their purported relevance. (SAppx2389-2533 (Ex. 51 LinkedIn Profiles); Appx718 (citing Ex. 51 (SAppx2389-2533)).

**[CONFIDENTIAL MATERIAL OMITTED]**

having any knowledge of haptics functionality.  Resp. Br. at 16.  Immersion also does not dispute that there is no evidence in the record that Mr. Roche had any specific knowledge of Meta's Accused Quest 2 and Quest Pro Products.  *Id.* at 17. Even if this Court were to overlook the district court's unsupported findings with respect to Messrs. Carmack and Roche, the district court should still have weighed the compulsory process factor heavily in favor of transfer given the presence of more than ten times more non-party witnesses in NDCA than WDTX.

## B.    California's Substantial Local Interest Also Favors Transfer

Similar to the district court's opinion, Immersion's response here disregards Immersion's 30-year history in NDCA, where its headquarters was located until a few months before filing suit.  It is undisputed that Immersion developed the patented technology in NDCA.  Immersion also holds its board meetings in the Northern District "out of [ ]"  Resp Br. at 33 n.11 (citing Appx827 at 111:2-14).  Finally, legions of former Immersion employee inventors and prior artists still reside in NDCA.  Pet. at 21; Resp. Br. at 31-33.  These established facts strongly support a finding that NDCA has a local interest in this dispute.  *Google I*, 58 F.4th at 1385 (finding a particularized local interest in NDCA where the "patented technology was invented in, and the patents prosecuted from" NDCA).

Immersion also ignores the enormous evidence demonstrating Meta's strong and longstanding connections to NDCA, including the fact that hundreds of Meta

employees who "researched, designed, and developed the accused functionality reside in NDCA." Pet. at 19; *see Google I*, 58 F.4th at 1385 (finding particularized local interest in NDCA where movant "developed the accused products in [NDCA]"). Immersion also does not dispute that the local interest is strengthened because the reputation of Meta and its NDCA-based employees have been called into question by Immersion's allegations. *See In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020) (finding local interest weighed in favor of transfer "because of [plaintiff's] 'presence in NDCA' and absence from WDTX; because the accused products were designed, developed, and tested in NDCA; and because the lawsuit 'calls into question the work and reputation of several individuals residing' in NDCA") (quoting *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009)). Immersion's failure to address any of these facts further confirms that the local interest in NDCA strongly favors transfer.

Instead, Immersion's response points to a few Austin based game developers like Owlchemy and Mighty Coconut, but as noted above, the district court found insufficient evidence of their relevance to be considered in the compulsory process factor. Nor does Immersion explain the relevance of Meta's acquisition of two game studios. Resp. Br. at 31-32. Immersion also regurgitates its arguments about TI and Cirrus Logic, companies that the district court expressly found "are not relevant third parties" in the compulsory process factor. Appx27. Tellingly, Immersion cites no

11

case law that a few third parties could be sufficient to overcome the overwhelming evidence tying both Meta and Immersion to the NDCA's local interest. Finally, the "30+ employees" with tenuous connections to the Accused Products that Immersion claims are "relevant" cannot outweigh the hundreds of Meta employees that Meta identified that specifically developed the Accused Products in NDCA.

Immersion's failure to meaningfully respond to the overwhelming evidence supporting the local interest factor only further confirms why this factor should weigh strongly in favor of transfer to NDCA.

**C.  The Nearly 400 Potential Willing Witnesses That Would Find NDCA More Convenient Far Exceed The 23 Credited By The District Court In WDTX**

It is clear that far more willing witnesses would find NDCA more convenient. Immersion's response ignores the hundreds of potential willing witnesses who would find NDCA more convenient for trial, and attempts to exaggerate the number of willing witnesses that would find WDTX more convenient. Indeed, Immersion's briefing again argues that the district court got it wrong, increasing the number of WDTX willing witnesses from 23 to 36 (adding back in witnesses the district court rejected) and reducing the NDCA willing witnesses from 17 to 15 (without specifying any witnesses it took off the court's list).

Immersion acknowledges that Meta's motion, which included a 16-page declaration by Michelle Woodhouse, its 30(b)(6) witness, provided an explanation

of the individuals job responsibilities, their relevance to the issues presented in the case, and the locations of the individuals on their teams. In total, Meta identified more than 390 potential willing witnesses that are part of the teams that research, design, develop, market, and work on the finances of the Accused Products and the specific accused haptics functionality that would find trial in NDCA more convenient than WDTX.  In stark contrast, Immersion provided a list of 20 individuals in WDTX, with no information about their purported relevance aside from a few largely speculative bullet points.  The sheer quantity of relevant persons in NDCA (provided by Meta) as compared to the speculative identification of persons in WDTX (provided by Immersion), requires that this factor weigh strongly in favor of transfer.  *See In re Microsoft*, 2023 WL 3861078, at \*2 ("center of gravity" where "vast majority of potential witnesses with relevant and material information reside").

Like the district court, Immersion disregards the showing made in Meta's motion about the relevance of the people on the identified teams and how they are tied to the Accused Product features' research, design and development.  Instead, Immersion continues to vastly overstate the roles of the witnesses in its "bullet point" lists.  In the petition, Meta cited the example of Ms. Cara Connolly, a Meta in-house lawyer who transferred to Texas after the suit was filed, that the district court found had "relevant information about the development of the accused products" when no

such evidence was in the record.  Pet. at 25.  Apparently desperate to shore up the district court's findings, Immersion now claims without any evidence that Ms. Connolly is the "current legal head of the entire Reality Labs division," (Resp. Br. at 23), a statement that is categorically false and, once again, has no support in the record.  The record reflects that the legal head of the Reality Labs division is actually Jordan McCollum.  SAppx2023.  Mr. McCollum is based in a Meta office in Burlingame, CA, a location in the NDCA, not WDTX.  *Id.*

Immersion also attempts to attack Meta's declarant, Ms. Woodhouse (an attorney and member in good standing of the bar of this Court for more than nine years), claiming that she "would not confirm" who the most knowledgeable persons were about certain subject matter.  Resp. Br. at 23.  Not so.  The cited portions of the deposition reveal that Ms. Woodhouse testified as to what those persons and their teams were knowledgeable about and noted where, if the question had been more specific, other people on the team might be more knowledgeable.  *See* SAppx1502-1503 at 200:10-202:14, SAppx1504-1507 at 205:16-220:19, SAppx1508-1509 at 223:24-226:6, SAppx1509-1510 at 228:7-232:14, SAppx1511 at 234:15-236:7.  Immersion's unsubstantiated assumption, that a single "most knowledgeable" person even exists with respect to broad categories of information, ignores how large teams work on complex products.  Meta's motion properly identified a larger group of team members in order to provide a fulsome disclosure of potentially

knowledgeable individuals, which was also appropriate given the early stage in the case. *See, e.g.*, SAppx1504 at 205:20-208:9.

## VI. CONCLUSION

As set forth above and in the Petition, the Court should direct the district court to vacate its May 29, 2023 order and direct the district court to transfer the case to NDCA under § 1404(a).

Dated:  August 14, 2023                Respectfully submitted,

*/s/ Heidi L. Keefe*

Heidi L. Keefe
Mark R. Weinstein
Elizabeth L. Stameshkin
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304

Phillip E. Morton
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, D.C. 20004-2400

*Counsel for Petitioner Meta Platforms, Inc.*

# CERTIFICATE OF COMPLIANCE

I certify that this Reply complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A). This Reply contains 3,480 words, excluding the parts of the Motion exempted by Fed. R. App. 27 (d) and Fed. Cir. R. 27(d). This Reply complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6). This Reply has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated: August 14, 2023                Respectfully submitted,

*/s/ Heidi L. Keefe*
Heidi L. Keefe

*Counsel for Petitioner Meta Platforms, Inc.*

16

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2023, I filed or caused to be filed the confidential and non-confidential Reply with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system and caused to be served a copy of the non-confidential Reply on all counsel of record by the CM/ECF system.

I further certify that on August 14, 2023, the confidential Reply was caused to be served on all counsel via email per consent of Counsel.

*/s/ Heidi L. Keefe*
Heidi L. Keefe